[ECF No. 69]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **JANE DOE P.B.**, <br><br> Plaintiff, <br><br> v. <br><br> **WYNDHAM HOTELS & RESORTS, INC.**, et al., <br><br> Defendants. | Civil No. 23-1493 (ESK/EAP) |

## OPINION

This matter comes before the Court on Plaintiff Jane Doe P.B.'s Motion for Entry of Discovery Confidentiality Order ("DCO"), ECF No. 69.  Defendants submitted their respective opposition to Plaintiff's motion, ECF Nos. 72, 73, followed by Plaintiff's submission of her supplemental brief in support of her motion, ECF No. 74.  The Court having reviewed the parties' submissions and deciding this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1, for the reasons that follow and good cause shown, Plaintiff's Motion for Entry of Discovery Confidentiality Order is **GRANTED**.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 17, 2024, Plaintiff Jane Doe P.B. filed this action alleging that she was repeatedly trafficked and exploited at a hotel owned and operated by Defendants Wyndham Hotels & Resorts, Inc. ("Wyndham"), Ramada Franchise Systems, Inc. ("Ramada"), and Dorca Co., Inc. ("Dorca") (collectively, "Defendants").  Plaintiff seeks damages from these Defendants under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1581 *et seq.*, for

"harms and losses she suffered because of sex trafficking she endured" at a "hotel owned, operated, maintained, and controlled" by Defendants. ECF No. 64, Third Am. Compl. (hereinafter "Compl.") ¶ 1. Plaintiff further alleges that each Defendant "developed a continuous business relationship with sex traffickers . . . by providing these traffickers with hotel rooms and related services" despite warning signs that Plaintiff alleges would have alerted Defendants to the Plaintiff's sex trafficking occurring in the hotel. *Id.* ¶¶ 4-5.

From 2015 through 2017, Plaintiff alleges that she was trafficked in several states, to include New Jersey and Pennsylvania. *Id.* ¶ 22. Plaintiff alleged that her "trafficker preyed upon her vulnerability and through force, fraud, and coercion trafficked [her]." *Id.* ¶¶ 21-22. Plaintiff further alleged that her trafficker used physical force and threats against her and her family's safety to keep her "compliant in the trafficking scheme." *Id.* ¶ 21. Plaintiff was only able to provide the dates of March 15, 2016 through March 16, 2016, as the days on which she was allegedly trafficked at the Toms River Ramada Inn. *Id.* ¶ 23.

Given the allegations in the Complaint, Plaintiff filed this action pseudonymously and seeks to maintain full confidentiality. In that regard, Plaintiff filed the present motion on April 16, 2024, seeking entry of her proposed Discovery Confidentiality Order ("DCO"). ECF No. 69 ("Pl.'s Motion").

On May 6, 2024, Defendants Wyndham and Ramada filed opposition to the motion. ECF No. 72 ("Defs.' Opp."). On May 7, 2024, Defendant Dorca filed a letter joining Wyndham and Ramada's arguments in full. *See* ECF No. 73. On May 21, 2024, Plaintiff filed a supplemental brief supporting her motion. *See* ECF No. 74.

The parties agree on most terms in Plaintiff's proposed DCO. The parties' dispute in this action is limited to two provisions in Plaintiff's proposed DCO. First, the parties disagree over

2

Plaintiff's definition of her "True Identity" as "any information, document, or thing, or portion of any document or thing that contains Plaintiff's name, alias names used at any time, Plaintiff's date of birth, or other information that could be used to identify Plaintiff." *See* ECF No. 69-2 ("Proposed DCO"), ¶ 3. Defendants contend that this proposed definition is "impermissibly broad and vague." Defs.' Opp. at 5.

Second, the parties disagree over Plaintiff's proposed restrictions to disclosure of Plaintiff's True Identity in the proposed DCO which are as follows:

> 9. Plaintiff's True identity material may be disclosed only to the following individuals under the following conditions:
>
> . . . .
>
>     f.    Any deponent may be shown or examined on any information, document, or thing designated Plaintiff's True Identity provided such person has signed a Certification in the form attached hereto as <u>Exhibit A</u>;
>
>     g.    Former employees, officers, and representatives of the Parties, provided they have signed a Certification in the form attached hereto as <u>Exhibit A</u>;
>
>     h.    Current and former contractors of the Parties provided they have signed a Certification in the form attached hereto as <u>Exhibit A</u>;
>
> . . . .
>
>     j.    Any potential, anticipated, or actual fact witness (with the exception of Plaintiff's alleged trafficker), provided they have signed a Certification in the form attached hereto as <u>Exhibit A</u>;
>
> . . . .

Proposed DCO ¶ 9 (emphasis in original). Exhibit A, in turn, asks the recipient to declare:

> 4.    I have carefully read and understood the provisions of the Discovery Confidentiality Order in this case signed by the Court, and I will comply with all provisions of the Discovery Confidentiality Order.
>
> 5.    I will hold in confidence and not disclose to anyone not qualified under the Discovery Confidentiality Order any Confidential, Attorneys' Eyes Only, or Plaintiff's True Identity Material or any words, summaries,

3

abstracts, or indices of Confidential Information disclosed to me.

6.  I will limit use of Confidential, Attorneys' Eyes Only, and Plaintiff's True Identity Material disclosed to me solely for purpose of this action.

7.  No later than the final conclusion of the case, I will return all Confidential, Attorneys' Eyes Only, and Plaintiff's True Identity Material and summaries, abstracts, and indices thereof which come into my possession, and documents or things which I have prepared relating thereto, to counsel for the party for whom I was employed or retained.

Proposed DCO, Ex. A, ¶¶ 4-7. Defendants argue in their briefs that the proposed restrictions would "impede . . . Defendants' right to investigate and defend against Plaintiff's claims by dissuading witnesses from cooperating." Defs.' Opp. at 6.

## DISCUSSION

"[O]ne of the essential qualities of a Court of Justice [is] its proceedings should be public." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (citation omitted). As such, in the absence of countervailing circumstances, permitting a plaintiff to pursue litigation anonymously "runs afoul of the public's common law right of access to judicial proceedings." *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)). Because "the public's interest in open judicial proceedings always runs counter to a litigant's interest in anonymity," the court must balance these divergent positions. *Doe v. Coll. of N.J.*, 997 F.3d 489, 496 (3d Cir. 2021). To address this tension, the Third Circuit in *Doe v. Megless* adopted a non-exhaustive list of factors a court should consider when a party seeks to proceed anonymously. *See* 997 F.3d at 495. Other Circuits have adopted a similar approach when balancing a litigant's need for anonymity against the public's interest in open proceedings. *Megless*, 654 F.3d at 408 (collecting cases).

Here, the parties do not dispute that a Discovery Confidentiality Order is warranted. And whether Plaintiff may proceed pseudonymously is also not at issue. Defs.' Opp. at 1. Instead, the

4

parties' dispute focuses on specific provisions of Plaintiff's Proposed DCO that would require deponents and fact witnesses to agree to nondisclosure of Plaintiff's "True Identity" before being able to refer to Plaintiff by name. Plaintiff argues that the confidentiality agreement is necessary to protect Plaintiff's private and sensitive information, prevent stigmatization, reduce the risk of retaliation from Plaintiff's traffickers, and that nondisclosure in this context furthers the public interest because disclosure "would likely deter other sex-trafficking survivors from pursuing violations of their own legal rights." Pl.'s Motion at 6. Defendants counter by arguing that the disputed provisions are broad, vague, and unduly burdensome.

Thus, the question before the Court is whether Plaintiff has met her burden of demonstrating good cause for the contested provisions in the proposed DCO, and if so, whether they are impermissibly broad and vague and unduly restrictive on Defendants. Federal Rule of Civil Procedure 26(c) authorizes courts "to enter a protective order upon a demonstration of 'good cause'" to "protect a party from annoyance, embarrassment, oppression or undue burden or expense." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 469 (E.D. Pa. 1997). "Trial courts are required to apply a standard which balances the private and public interests implicated by the facts of the particular case at bar." *Id.* at 469 (citing *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787-89 (3d Cir. 1994)). Good cause exists if "'disclosure will work a clearly defined and serious injury'" to the party seeking protection. *Pansy*, 23 F.3d at 786 (quoting *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). The party seeking protection must demonstrate "a clearly defined and serious injury" by substantiated examples because "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not suffice. *See id.* (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). In balancing these interests, the Third Circuit has held that "trial courts will always be required to

consider those [other] factors which the facts of the particular case implicate." *Megless*, 654 F.3d at 409 (alteration in original) (internal quotation omitted).

>  A.   **Granting the Order Would Not Exceed the Court's Authority Under Federal Rule of Civil Procedure 26**

As a preliminary matter, the Court addresses Defendants' contention that the Court would exceed its authority if it grants Plaintiff's motion. Under Rule 26(c)(1):

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including on or more of the following:
>
> > (A) forbidding the disclosure or discovery;
>
> . . . .
>
> > (D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]
>
> . . . .

Fed. R. Civ. P. 26(c)(1). Further, under the Court's Local Civil Rules, confidentiality orders are routinely entered in cases filed in this District. *See* L. Civ. R. 5.3(b)(1) ("Parties may enter into written agreements to keep materials produced in discovery confidential and to return or destroy such materials as agreed by parties and as allowed by law."). "The form of [the confidentiality] order shall be subject to modification by a Judge at any time."[1] L. Civ. R. 5.3(b)(3). Moreover, Local Civil Rule 5.3(b)(5) states that "[a]ny dispute regarding the entry of an order, or the confidentiality of discovery materials under any order, under this section shall be brought before a Magistrate Judge pursuant to L.Civ.R. 37.1(a)(1)."

---

[1] In Appendix S to the Local Civil Rules, the Court has approved a model confidentiality order.

Before the Court is a disagreement over the "form of [the confidentiality] order." L. Civ. R. 5.3(b)(3).  Here, Plaintiff has submitted a request for a confidentiality order that seeks to protect her "True Identity" from willful or inadvertent disclosures, which Defendants dispute are impermissibly broad, vague, unduly restrictive, and beyond the form of order in Appendix S of the Local Rules.  Defs.' Opp. at 8.  The contested provisions seek to "forbid the disclosure or discovery" of Plaintiff's "True Identity," Fed. R. Civ. P. 26(c)(1)(A), and "limit[] the scope of disclosure or discovery to certain matters" unless certain requirements are met, Fed. R. Civ. P. 26(c)(1)(D).  While the proposed order differs from the order in Appendix S of the Local Rules, Local Rule 5.3(b)(3) states in relevant part that "[t]he form of order shall be subject to modification by a Judge at any time."  Therefore, under both the Federal Rules of Civil Procedure and the Court's Local Civil Rules, the Court has the authority to grant and modify a discovery confidentiality order should it find that Plaintiff has established good cause and Defendants' rights to conduct full and fair discovery is balanced against Plaintiff's interests.

### B.  Good Cause Exists for the Contested Provisions in the DCO

Applying the applicable case law and weighing this case's unique facts, the Court finds that Plaintiff has satisfied her burden of demonstrating good cause for the contested provisions. Plaintiff alleges that she is a victim of human sex trafficking.  She seeks to protect herself from further harm that could result from her true identity being disclosed to her trafficker and her community.  As Plaintiff explains in her motion, "publicly linking [her] identity to details of the horrific sexual exploitation she endured would risk retraumatizing her and exacerbating her mental and emotional distress."  Pl.'s Motion at 5.  Plaintiff further argues that publicly linking her identity to the litigation "poses a real risk for stigmatization" by "negatively impact[ing] her relationships with family, friends, and coworkers as well as her standing in the community."  *Id.; see A.D. v.*

7

*Wyndham Hotels & Resorts, Inc.*, No. 19-120, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020) (noting that plaintiff could suffer "mental and emotional harm . . . if she is forced to proceed publicly."). The Court finds that these arguments weigh in favor of granting Plaintiff's request for the contested provisions to protect her from harm that could result if her personal and highly sensitive information is disclosed.

The Court also finds that the contested provisions would reduce the risk of retaliation from Plaintiff's traffickers. *See* Pl.'s Motion at 5. Defendants argue that Plaintiff has not sufficiently articulated the risk of harm she would suffer if her true identity were disclosed. *See* Defs.' Opp. at 2. The Court disagrees. Plaintiff has articulated in her Complaint and in her motion that, during the period in which she was trafficked, "[o]n occasion, physical force was used against [Plaintiff] with threat to her and her family's safety if she did not remain compliant in the trafficking scheme." Compl. ¶ 21; *see also* Pl.'s Motion at 6 ("The extreme abuse that [Plaintiff] endured while under the control of her trafficker demonstrates that he is a dangerous individual capable of inflicting additional substantial harm."). Other courts have had occasion to consider similar issues and have reached similar rulings. *See, e.g.*, *Jane Doe (T.W.) v. JRD P'ship D/B/A America's Best Inn, Inc.*, No. 23-928 (M.D. Tenn. May 16, 2024), ECF No. 96 at 5 ("The Court finds that Plaintiff has met her burden to articulate specific facts showing the clearly defined and serious injury that may occur if her true name is revealed to fact witnesses without . . . a non-disclosure agreement . . . ."); *C.S. v. Wyndham Hotels & Resorts, Inc.*, No. 20-634, 2021 WL 7448023, at *5 (M.D. Fla. June 11, 2021) ("[T]he potential risk of retaliation still weighs in favor of permitting Plaintiff to proceed pseudonymously as it may help her avoid potential detection by her alleged traffickers' associates."); *M.L. v. craigslist Inc.*, No. 19-6153, 2020 WL 8639345, at *1 (W.D. Wash. Jul. 8, 2020) ("Although there are no allegations, or declarations from M.L. about recent threats by these

individuals, or by associates of these individuals, the Court finds that the allegations . . . are sufficient to show the severity of the potential harm is immense."), *objections overruled by* 2020 WL 5701835 (W.D. Wash. Sept. 24, 2020).

Finally, the Court finds that the contested provisions would also advance the public interest. In support of her motion, Plaintiff submitted the declaration of Dr. Noël Busch-Armendariz. Dr. Busch-Armendariz attests that "victims of human trafficking need the protection of the Court to overcome their very reasonable fears for their safety." ECF No. 69-1 ("Busch-Armendariz Decl.") at 2. Protecting Plaintiff's identity here from unnecessary and harmful disclosure advances the public interest of combating human sex trafficking under the law while also shielding victims of sex trafficking from further victimization and embarrassment. *See Doe v. De Amigos, LLC*, No. 11-1755, 2012 WL 13047579, at *2 (D.D.C. Apr. 30, 2012) (noting that "'the public generally has a strong interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes.'" (quoting *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006))).

For these reasons, the Court finds that Plaintiff has demonstrated good cause for the contested provisions.

### C.    Plaintiff's Definition of "True Identity" Is Not Impermissibly Broad or Vague

Despite Defendants' arguments to the contrary, the Court finds that Plaintiff's definition of "True Identity" is not impermissibly broad or vague. Paragraph 3 of Plaintiff's proposed DCO defines "True Identity" to include "any information, document, or thing, or portion of any document or thing that contains Plaintiff's name, alias names used at any time, Plaintiff's date of birth, or other information that could be used to identify Plaintiff." Proposed DCO at 3, ¶ 3.

The Court finds that the definition is fashioned in such a manner that is broad enough to protect Plaintiff from willful or inadvertent disclosure of her "True Identity" but not overly broad as to substantially impede Defendants' ability to conduct full and fair discovery. Defendants argues that, under Plaintiff's definition, Plaintiff "intends to encompass items such as a photograph to a potential witness without any other identifying information unless that witness signs the order and submits to the Court's jurisdiction." Defs.' Opp. at 6. Defendants would be correct that a photograph of Plaintiff would, indeed, fall under the definition of "True Identity" as it would enable a deponent or fact witness to identify Plaintiff. The purpose behind the proposed DCO is to ensure that any identifying information, to include "other information that could be used to identify Plaintiff," is not used unless Plaintiff has assurances she is protected from harmful disclosure. Proposed DCO at 3, ¶ 3.

Defendants propose a revised definition would that be defined as "Plaintiff's personally identifiable information, including her names, date of birth, social security number, current address, and current phone number of email address." Defs.' Opp. at 6, n.1. A narrower definition, however, would permit Defendants to use photographs of Plaintiff or Plaintiff's social media posts in lieu or her name or other identifying information which would defeat the purpose of implementing a DCO in the first place and risk further harm to Plaintiff.

For these reasons, the Court finds that Plaintiff's proposed definition is broad enough to protect Plaintiff from willful disclosure of her "True Identity."

### D.  Requiring Deponents and Fact Witnesses to Sign a Confidentiality Agreement Is Not Unduly Restrictive

The Court also finds that requiring deponents and fact witnesses to sign a confidentiality agreement prior to Defendants disclosing Plaintiff's "True Identity" is not unduly restrictive.

The Court acknowledges Defendants' concerns regarding their right to conduct full and fair discovery if deponents and fact witnesses are required to sign a confidentiality agreement regarding Plaintiff's true identity. *See A.D.*, 2020 WL 5269758, at *3 ("The protective order must allow Defendant full access to Plaintiff's identity . . . and for Defendant to utilize this information in discovery."). However, the Court is not persuaded that requiring deponents and fact witnesses to sign a confidentiality agreement prior to having Plaintiff's "True Identity" revealed to them would impede Defendants' ability to "investigate and defend against Plaintiff's claims by dissuading witnesses from cooperating." Defs.' Opp. at 6. Defendants distinguish several cases that Plaintiff relies upon to support her argument; namely, *J.C. v. Choice Hotels International, Inc.*, No. 20-155, 2021 WL 1146406 (N.D. Cal. Mar. 4, 2021). While Defendants are correct in that the protective order in *J.C.* was more narrowly defined as the "plaintiff's full name (and any alias names) and date of birth," Defs.' Opp. at 8, the Court finds that the difference between that definition and Plaintiff's proposed definition here are not significant. Further, as previously stated, the Court finds that the narrower definition would undermine the confidentiality order because it would not encompass other identifying materials such as photographs or social media posts. *See J.C.*, 2021 WL 1146406, at *6 ("If a witness refuses to sign an agreement ensuring that protected information will not be further disseminated, I would have 'little confidence that the witnesses will keep [Plaintiff's] identity . . . confidential.'" (quoting *A.D.*, 2020 WL 8639346, at *2)). Defendants are not being asked to conduct discovery while barred from disclosing Plaintiff's "True Identity" in all respects. Rather, Plaintiff is requesting that the confidentiality agreement be put in place to protect Plaintiff from harm from inadvertent disclosures.

The Court understands the Defendants' concerns and will not leave Defendants without recourse. If a deponent or a fact witness refuses to sign the confidentiality agreement, Defendants

11

are granted leave to submit a letter to the Court *ex parte* that explains the issue, after which the Court will render a ruling on whether to lift the agreement for that deponent or fact witness or whether alternative measures will be taken.[2]

### CONCLUSION

Plaintiff has met her burden of demonstrating good cause for the contested provisions in the proposed DCO. Further, the Court finds that Plaintiff's definition of her "True Identity" is not impermissibly broad or vague but instead is defined to the extent required to protect Plaintiff from credible risk of harm. Finally, the Court finds that requiring Defendants to have deponents and fact witnesses sign a confidentiality agreement before disclosing Plaintiff's "True Identity" is not unduly restrictive because it protects against willful disclosure of potentially harmful information, and because Defendants are not without recourse if the requirement presents a substantial obstacle to discovery.

Accordingly, Plaintiff's Motion for the Discovery Confidentiality Order is **GRANTED**. An appropriate Order follows.

s/Elizabeth A. Pascal  
ELIZABETH A. PASCAL  
United States Magistrate Judge

cc: Hon. Edward S. Kiel, U.S.D.J.

---

[2] The court in *J.C.* similarly noted that Defendants could send a letter *ex parte* to the court identifying "the information sought and explaining the necessity of the disclosure." 2021 WL 1146406, at *4. The Court finds this to be a reasonable compromise and so adopts the same position here.